1

2

3                     UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6   AMY LIU,

7              Plaintiff,                    Case No.  15-cv-04958-PJH

8        v.
                                             **ORDERING GRANTING**
9   UC BERKELEY/UC REGENTS,                  **DEFENDANT'S MOTION FOR**
                                             **SUMMARY JUDGMENT; DENYING**
10             Defendant.                    **PLAINTIFF'S MOTION FOR SUMMARY**
                                             **JUDGMENT**
11
                                             Re: Dkt. Nos. 45, 51
12

13        The parties' cross motions for summary judgment came on for hearing before this

14   court on January 25, 2017.  Plaintiff Amy Liu appeared pro per.  Defendant the Regents

15   of the University of California ("the Regents"[1]) appeared through its counsel, Marie

16   Trimble Holvick.  Having read the papers filed by the parties and carefully considered

17   their arguments and the relevant legal authority, and good cause appearing, the court

18   hereby GRANTS defendant's motion for summary judgment and DENIES plaintiff's

19   motion for summary judgment, for the following reasons.

20                              **BACKGROUND**

21   **A.    Procedural History**

22        This is an employment dispute, filed on October 28, 2015.  Plaintiff Amy Liu is

23   proceeding pro se.  On April 28, 2016, the court granted in part and denied in part a

24   motion for leave to file an amended complaint.  Dkt. 33.  The operative first amended

25   complaint ("FAC") followed.  Dkt. 34.

26

27   _____

28   [1] Although the case caption lists the defendant as "UC Berkeley/UC Regents," the
     Regents are the real party in interest.

_(left margin)_ United States District Court  Northern District of California

**B.     The Allegations of the First Amended Complaint**

Liu worked in several administrative and finance positions at the University of California, Berkeley ("UC Berkeley") from March 1993 to August 2009.  FAC ¶ 20.  She was laid off from her position with the Department of Industrial Engineering and Operations Research ("IEOR") on August 31, 2009.  FAC ¶ 2.  After her layoff, Liu repeatedly sought to be reemployed at UC Berkeley and other UC campuses.  Despite applying for "over 150 jobs" she was not rehired by UC Berkeley despite her substantial experience.  FAC ¶¶ 7, 21, 40.  In July 2011, Liu received a job offer at Stanford University and took a position there.  FAC ¶ 41.

Liu is a 56-year-old Chinese-American woman.  FAC ¶¶ 9, 48.  The FAC asserts that her layoff and failure to be rehired by UC Berkeley were motivated by discrimination and/or retaliation.  Plaintiff asserts six claims:

**1.  "Count One" –Title VII Employment Discrimination.**  Liu alleges that she was discriminated against and subjected to a hostile work environment based on race, national origin, and age.  FAC ¶¶ 45–53.  In particular, Liu alleges that her younger white co-worker "Miss Niccolls" had less experience but was paid more than her.  FAC ¶¶ 22, 52.  Liu alleges that it was discriminatory that her position, and not Niccolls' position, was eliminated in 2009.  FAC ¶ 29.  Liu also complains that her co-worker Michael Campbell was hired despite a lack of experience and given preferential treatment because he was the "boyfriend" of Liu's manager Diane Olney.  FAC ¶¶ 31–34, 47.

**2.  "Count Two" – Title VII Retaliation**.  Liu alleges that her layoff was made "because she witnessed, questioned, and attempted [to make] some correction of the management of IEOR."  Her protected allegations included a "hostile work environment," "discriminatory employment practices," "giving jobs to friends and relatives," as well as alleged fraud/misuse of funds by management.  FAC ¶¶ 4–5, 55–58.  After her layoff, the Regents "blocked" her attempts to secure a new position at UC Berkeley because of her whistleblowing.  FAC ¶¶ 59–60.

**3.  "Count Three" – Defamation**.  This claim is based on the alleged "statements to a third party" made by Olney and the former Manager of the Preferential Rehire/Recall Program at UC Berkeley, Charo Albarran.  Liu alleges that these two individuals blacklisted her as an "un-preferred employee who could not be rehired," causing Liu's failure to be rehired at UC Berkeley.  FAC ¶¶ 62–65.

United States District Court
Northern District of California

**4. "Count Four" – Procedural Due Process**.  Liu alleges that the UC Whistleblower Program failed to afford her a hearing to dispute the "charges against her continuing employment with UC [Berkeley]."  FAC ¶ 67.  Liu also alleges that UC's Vice Chancellor "interfered" with the investigation of her complaint before the California Labor Commissioner.  FAC ¶ 68.

**5. "Count Five" – Retaliation in Violation of Cal. Labor Code § 1102.5**.  Liu alleges that the California Labor Commissioner "failed to make an unbiased investigation" of her retaliation complaints.  Instead, the defendant, the Labor Commissioner, and Liu's former attorney "collaborated" to prevent Liu from "receiv[ing] a fair trial."  FAC ¶¶ 71–72.

**6. "Count Six" – "Breach of Constitution[al] Rights"**.  Liu alleges that Olney, Albarran, and "every employee of HR of UC" retaliated against her and that "UC Berkeley/UC Regents" defamed her reputation.  FAC ¶¶ 75–76.  Liu adds allegations that the Regents' damage to her reputation caused her credit score to drop, leading to the loss of an "income property" and foreclosure on her home.  FAC ¶ 77.

Liu prays for reinstatement to her prior position with back pay, monetary damages, damages for pain and suffering, punitive damages, and costs.  FAC p. 29.

## UNDISPUTED FACTS

Based on the record evidence submitted, the court finds that there is no genuine dispute regarding the following facts.[2]

### A.    Liu's August 31, 2009 Layoff

Liu was laid off from her position on August 31, 2009.  Liu Dep. Tr. 46:7–9 (Dkt. 45-2 Ex. 1).  The letter informing Liu of her layoff states that it was made pursuant to Personnel Policies for Staff Members Policy 60 ("PPSM 60") as a result of "the enormous permanent budget cut (21%) that our department recently received."  Holvick Decl. ("HD") Ex. 35 (Dkt. 53-1).  The letter states that Liu was selected because "you are the only employee in the Finance job field at the professional level 2."  UC Berkeley offered Liu a choice between severance pay and a "preference for reemployment" lasting 3 years.  Id.

---

[2] Although none of the parties' evidentiary disputes are material to the resolution of these motions, the court SUSTAINS defendant's objections to evidence submitted in support of Liu's motion for summary judgment.  Much of Liu's supporting declaration is speculative, lacks foundation, and asserts ultimate legal conclusions.  Moreover, as indicated by the proof of service, there is no merit to Liu's claim that the Regents did not timely respond to her requests for admission.  See Holvick Decl. ¶ 8; HD Ex. 40–42.

1    Liu chose the latter option.  Liu Dep. Tr. at 66:9–13.

2    **B.     Liu's Internal and Administrative Complaints**

3          Following her 2009 layoff, Liu pursued her allegations of discrimination and

4    retaliation using at least five different processes.

5          **1.     UC Berkeley Grievance Process**

6          UC Berkeley's internal grievance process is governed by PPSM 70.  HD Ex. 34;

7    Liu Dep. Tr. 300:16–23, 303:12–304:18.  Liu filed a grievance on September 21, 2009.

8    HD Ex. 4.  There are three steps to the review process.  HD Ex. 34.

9          At Step I, Liu's supervisor Olney denied the grievance on October 15, 2009,

10   explaining that because Liu was the only person in the finance field, seniority was not a

11   consideration and the layoff was proper under PPSM 60.  HD Ex. 6.  Liu filed an appeal

12   to Step II.  HD Ex. 7.  At Step II, Liu's grievance was again denied by the reviewer, Emily

13   Karakashian, on January 28, 2010.  HD Ex. 13.

14         At Step III, after Liu failed to selected an arbitrator, HD Ex. 17, the appeal was

15   denied on June 4, 2010.  HD Ex. 19.  Regarding her failure to choose an arbitrator, Liu

16   explained that "I couldn't select [an arbitrator] from this listing because I didn't feel this

17   would be fair to me."  HD Ex. 14 at 3.

18         **2.     The UC Whistleblower Program**

19         On September 21, 2009, Liu called the UC Whistleblower Program hotline to make

20   a complaint.  HD Ex. 20 at Attach. B.  On October 14, 2009, the UC Whistleblower

21   Coordinator Alan Kolling sent Liu a letter informing her of the procedure for filing a formal

22   whistleblower retaliation complaint under UC's Whistleblower Policy.  HD Ex. 5.  Liu filed

23   such a complaint on February 3, 2010, alleging retaliation and making similar allegations

24   as her current complaint.  HD Ex. 15, 20.  The process was stayed until the PPSM

25   grievance procedure was completed.  HD Ex. 20 at Attach. G.

26         On September 17, 2010, Kolling issued an eight-page report on the findings of his

27   investigation.  HD Ex. 20.  The report concluded that Liu engaged in protected activity by

28   alleging misuse of IEOR funds relating to alcohol purchases.  Id. at 3.  However, Liu's

United States District Court
Northern District of California

4

1   "allegations that she has been the subject of ongoing retaliation for whistleblowing" and

2   that "Albarran had engaged in false representations" were "not substantiated" by the

3   facts. Id. at 8.

4   ### 3.    California Department of Fair Employment and Housing ("DFEH")

5   On January 26, 2010, Liu interviewed with DFEH for the purpose of filing a charge

6   of discrimination based on her layoff.  HD Ex. 16 at  2.  DFEH declined to investigate, but

7   informed Liu that she could file a complaint "for filing purposes only" in order to obtain a

8   right-to-sue letter.  Id.  Liu took no action.

9   On October 18, 2010 (more than a year after the layoff), Liu again interviewed with

10  DFEH, who once again refused to investigate.  HD Ex. 21.  This time, Liu submitted a

11  formal complaint for filing purposes on November 29, 2010, and received a right-to-sue

12  letter in March 2011.  HD Ex. 23; Liu Dep. Tr. 256:5–12.  Liu's second DFEH charge was

13  related not to her layoff, but instead complained that Albarran and others "denied hire."

14  HD Ex. 23.

15  In the briefing and at oral argument, Liu admitted that she chose not to pursue her

16  DFEH charges because she opted go with the DLSE instead, as it was willing to

17  investigate her claims.  See Pl.'s Opp'n at 14.

18  ### 4.    California Division of Labor Standards Enforcement ("DLSE")

19  On February 8, 2010, Liu submitted a retaliation complaint under California Labor

20  Code § 1102.5 with the DLSE.  HD Ex. 14.  Liu's complaint alleged that "I should have

21  my right to bump [Niccolls] in terms of seniority," that Albarran had made "false

22  representations" against her, and that she was retaliated against for filing her

23  grievance/whistleblower complaint by not being rehired to the positions that she applied

24  to after her layoff.  Id. at 2–4.

25  Deputy Labor Commissioner Alan Levinson investigated the retaliation complaint.

26  HD Ex. 25.  On October 7, 2013, DLSE dismissed Liu's complaint.  HD Ex. 30.  Because

27  DLSE concluded that there was no protected activity prior to the layoff, Levinson focused

28  on the alleged post-layoff retaliation.  Id. at 2.  In a four-page written decision, Levinson

United States District Court
Northern District of California

5

1    concluded that there was no evidence of any nexus between protected activity and the

2    denial of Liu's job applications.  He found that Albarran's contrary testimony (that Liu was

3    denied one of the jobs that she applied for because she was not qualified) was credible

4    and "decidedly contradictory" to Liu's allegations.  Id. at 3–4.

5        Liu retained an attorney, Gregory Walston, to pursue an appeal.  The Director of

6    the Department of Industrial Relations denied Liu's appeal on March 17, 2014.  HD Ex.

7    32.  Through Walston, Liu petitioned for a writ of mandate in the Alameda County

8    Superior Court on May 1, 2014.  HD Ex. 36.  The Superior Court dismissed the petition,

9    and without the assistance of counsel, Liu appealed without success to the California

10   Court of Appeal, the California Supreme Court, and the Supreme Court of the United

11   States.  See HD Ex. 37 at Apps. 1–12; Liu Dep. Tr. 249:25–250:10, 259:13–261:6.

12       **5.    The Equal Opportunity Employment Commission ("EEOC")**

13       On March 4, 2015, Liu filed a charge of retaliation with the EEOC, alleging that she

14   was rejected from "hundreds" of UC positions because she complained of age and race

15   discrimination in 2010.  HD Ex. 2 at 6.  Liu received a right-to-sue letter from the EEOC

16   on September 29, 2015, id. at 7, and brought this suit on October 28, 2015.  Dkt. 1.

17   **C.    Liu's Efforts to Be Rehired**

18       There is no dispute that Liu unsuccessfully applied to many positions at UC

19   Berkeley and other UC campuses in the period from her August 2009 layoff through

20   September 2011.  (The parties dispute the precise number, and the Regents note that Liu

21   cancelled her interviews for some of the positions.)

22       In September 2011, Liu accepted a position at Stanford University.  FAC ¶ 41.  Per

23   Liu's own account, she injured her shoulder on October 14, 2011 while at work at

24   Stanford.  Pl.'s Mot. for Summ. J. at 11.  Liu took disability leave, and was terminated by

25   Stanford on December 6, 2011.  Id.

26       Because of her injury, Liu ceased applying for jobs at UC during 2012 and most of

27   2013.  Liu did not start her "reemployment activities with UC again [until] October 2013

28   when she felt better."  Id. at 12.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**A.    Legal Standard**

      A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

      A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

      Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105–06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324–25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

      When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial.  Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence

United States District Court
Northern District of California

1  of only "some alleged factual dispute between the parties will not defeat an otherwise

2  properly supported motion for summary judgment." Anderson, 477 U.S. at 247–48.

3      When deciding a summary judgment motion, a court must view the evidence in the

4  light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

5  Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).  In adjudicating

6  cross-motions for summary judgment, the Ninth Circuit "evaluate[s] each motion

7  separately, giving the nonmoving party in each instance the benefit of all reasonable

8  inferences." ACLU of Nevada v. City of Las Vegas, 466 F.3d 784, 790–91 (9th Cir. 2006)

9  (citations omitted).

10  **B.    Defendant's Motion for Summary Judgment**

11      The court will first analyze defendant's motion for summary judgment.  Defendant

12  divides Liu's allegations into three distinct time periods:  (1) events occurring during Liu's

13  employment at UC Berkeley and her August 31, 2009 layoff; (2) Liu's first job search from

14  September 1, 2009 through her hiring by Stanford in September 2011; and (3) Liu's

15  second job search, beginning in October 2013 through the filing of this suit in October

16  2015.  Defendant argues that summary judgment is appropriate because all of the claims

17  of discrimination and retaliation in the first two time periods are either time-barred or

18  unexhausted, and events in the third period fail as a matter of law on the undisputed

19  facts.  For the following reasons, the court agrees that summary judgment in favor of

20  defendant is appropriate on all claims.

21      **1.    First Claim – Employment Discrimination in Violation of Title VII**

22      Liu's first claim alleges that she was subjected to a hostile work environment and

23  discriminated against based on race, age, and national origin.  To prove a prime facie

24  case of discrimination under Title VII, plaintiff must show that (1) she is a member of a

25  protected class; (2) she was qualified for her position and performing her job

26  satisfactorily; (3) she experienced an adverse employment action; and (4) that similarly

27  situated individuals outside the protected class were treated more favorably, or other

28  circumstances surrounding the adverse employment action that give rise to an inference

8

1   of discrimination.  Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010).

2   To establish a prima facie hostile work environment claim under Title VII, plaintiff must

3   show that she (1) was subjected to verbal or physical conduct because of a protected

4   trait; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently

5   severe or pervasive to alter the conditions of her employment and create an abusive work

6   environment.  Manatt v. Bank of America, 339 F.3d 792, 798 (9th Cir. 2003).

7          Moreover, Title VII plaintiffs must exhaust their administrative remedies before

8   filing suit in federal court.  To establish federal subject matter jurisdiction for a Title VII

9   claim, a plaintiff must file an administrative charge with the EEOC or other appropriate

10  state agency (such as DFEH) before commencing an action.  B.K.V. v. Maui Police Dept.,

11  276 F.3d 1091, 1099 (9th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1).  The administrative

12  charge must be filed within 180 days of the alleged adverse employment action if the

13  charge is filed with the EEOC; if the plaintiff elects to file with DFEH, the charge must be

14  made within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-

15  5(e)(1).

16         If the EEOC or DFEH dismisses the charge and issues a right-to-sue letter, a

17  claimant has ninety days "after the giving of such notice" to file a civil action against her

18  employer.  42 U.S.C. § 2000e-5(f)(1).  This ninety-day period functions as a statute of

19  limitations: if a "claimant fails to file the civil action within the ninety-day period, the action

20  is barred."  Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997).

21         Liu's discrimination claim appears to be based solely on her 2009 layoff and the

22  hostile work environment that she allegedly suffered prior to the layoff.  FAC ¶¶ 45–53.

23  However, Liu has not exhausted her administrative remedies with regard to this claim.

24  Liu never filed an administrative charge regarding her 2009 layoff or hostile work

25  environment, HD Ex. 23; Liu Dep. Tr. 256:5–12, and the time period for doing so is long

26  past.  See 42 U.S.C. § 2000e-5(e)(1).  Therefore, this claim is unexhausted and the court

27  lacks subject matter jurisdiction over it.  B.K.V., 276 F.3d at 1099.

28  ///

United States District Court
Northern District of California

1    To the extent that Liu seeks to make a claim of discrimination occurring during her

2    first job search—September 2009 through September 2011—the claim is exhausted, but

3    untimely.  See 42 U.S.C. § 2000e-5(f)(1) (suit must be filed within 90 days of right-to-sue

4    letter).  Liu received a right-to-sue letter from DFEH regarding her first job search in

5    March 2011, but she did not bring suit until four years later.  Liu's filing of a new EEOC

6    complaint in 2014 cannot revive her untimely claims.  Acuna v. San Diego Gas & Elec.

7    Co., 217 Cal. App. 4th 1402, 1417 (2013).

8    Finally, to the extent that Liu seeks to make a claim for discrimination occurring

9    during her second job search, Liu has not exhausted her administrative remedies.  The

10   right-to-sue letter that Liu received from the EEOC on September 29, 2015 only asserts a

11   claim for retaliation.  HD Ex. 2 at 7.  In any event, even if this right-to-sue letter could be

12   construed to include a discrimination claim, Liu has offered no competent evidence to

13   support an inference of racial, age, or national origin discrimination in her failure to be

14   rehired.

15       2.       Second Claim – Retaliation in Violation of Title VII

16   To prove a claim of retaliation in violation of Title VII, a plaintiff must show "(1)

17   involvement in protected activity opposing an unlawful employment practice, (2) an

18   adverse employment action [by the defendant], and (3) a causal link between the

19   protected activity and the adverse action."  Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir.

20   2006).  Again, the court will analyze Liu's retaliation claim for each of the three relevant

21   time periods.

22   Any claim for retaliation based on Liu's 2009 layoff has not been exhausted.  As

23   explained above, Liu never filed an administrative charge regarding her 2009 layoff or her

24   alleged hostile work environment, and the time period for doing so has past.  The court

25   therefore lacks subject matter jurisdiction over this claim.

26   The claim for retaliation occurring during Liu's first job search is exhausted, but

27   time-barred.  Liu received a right-to-sue letter from DFEH on this claim in March 2011,

28   but she did not bring suit until four years later, well outside of the 90-day limitations

1    period.  See 42 U.S.C. § 2000e-5(f)(1).  Liu's filing of a new administrative charge in 2014

2    cannot revive the claims: the charge must be made within either 180 or 300 days of the

3    alleged unlawful employment practice, depending on the particular agency.  42 U.S.C.

4    § 2000e-5(e)(1); Acuna, 217 Cal. App. 4th 1402, 1417 (2013).

5         Liu's claim for retaliation occurring during her second job search is exhausted and

6    timely.  However, it fails as a matter of law on the undisputed facts.  There is no dispute

7    that Liu engaged in protected activity in 2009 and 2010 when she complained of

8    discrimination and retaliation.  However, Liu has submitted no evidence supporting a

9    nexus between her protected activities in 2009 and 2010 and her failure to be

10   reemployed from 2013 to 2015.  The persons that Liu accuses of conspiring to block her

11   reemployment—Olney and Albarran—left UC Berkeley in 2010 and are therefore no

12   longer involved in hiring decisions.  Liu Dep. Tr. 206:21–207:3, 207:10–17, 218:13–

13   219:2.  Liu has offered no evidence that current UC hiring managers are even aware of

14   her prior protected activities or are currently retaliating against her by denying

15   employment.  Liu admitted that she had no evidence, other than a "feeling", that Olney

16   had told others about her prior protected complaints.  Liu Dep. Tr. 189:21–190:11,

17   191:21–192:3.

18        Liu's attempt to save the claims relating to her layoff and first job search by relying

19   on the "continuing violation" doctrine fails as a matter of law.  This doctrine does not

20   apply to "discrete acts" of discrimination or retaliation, such as Liu's layoff and each

21   rejection of her job applications.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

22   101, 114 (2002).  Although a hostile work environment claim can be a "continuing

23   violation," id. at 105, any hostile work environment, by definition, ended in 2009.

24   Moreover, because Liu ceased applying for jobs at UC Berkeley during 2012, any alleged

25   retaliation that she suffered was not "continuing."

26        3.    Third Claim – Defamation

27        Liu's third claim for defamation is time-barred.  Defamation has a one-year statute

28   of limitations under California law.  Cal. Code Civ. Proc. § 340(c); Shively v. Bozanich, 31

1   Cal. 4th 1230, 1246 (2003).  The basis for the defamation claim in not clear in the FAC,

2   but in her deposition testimony and the briefing, Liu complains of two statements.  The

3   first is a July 6, 2010 email from Albarran to Liu, regarding a position that she had applied

4   for at UC Berkeley, stating that "I feel that [Liu] would not be able to learn the

5   fundamentals of this position within 6 months."  Dkt. 51-20 at 19.  The second statement

6   was oral, made by Olney to Liu's friend Anthony Clark in 2010.  Liu Dep. Tr. 137:13–

7   141:21.  Liu did not file suit until approximately five years after these statements were

8   made, well after the statute of limitations expired.  Liu's argument that the defamation

9   claim is timely because "defendant's wrongful statement is always there" is unavailing.

10  Pl.'s Opp'n at 22.  The claims accrued, at the latest, in 2010 when Liu became aware of

11  the statements.  See Shively, 31 Cal. 4th at 1246–48.

12          **4.    Fourth Claim – Procedural Due Process**

13          The precise basis for Liu's procedural due process claim is not clear from the

14  complaint.  In the briefing, Liu points to four bases for this claim: (i) UC's failure to give

15  her "advance notice" of the layoff or a hearing on the "true cause" of her layoff

16  (presumably relating to the UC grievance process); (ii) the failure of the UC

17  Whistleblower Program to grant her a hearing; (iii) the failure of the DLSE to grant her a

18  hearing; and (iv) alleged interference in the DLSE appeal process by defendant, the

19  Labor Commissioner, and Liu's former attorney Walston.  Pl.'s Opp'n at 11, 23.

20          Liu's claim is styled as based on the Fourteenth Amendment.  FAC ¶¶ 67–68.  As

21  guaranteed by the Fifth and Fourteenth Amendments, the "fundamental requirement of

22  due process is the opportunity to be heard at a meaningful time and in a meaningful

23  manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation omitted).  As the

24  extensive case history shows, Liu can hardly complain about being afforded inadequate

25  process.  On the contrary, Liu has pursued her claims in five different forums—her

26  employer's internal grievance process, the UC Whistleblower Program, and the

27  administrative processes of the DFEH, EEOC and the DLSE—before bringing suit in this

28  court.  In each process, Liu was able to file a complaint and submit supporting evidence,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  received notice of any hearings, and had a meaningful opportunity for her claims to be

2  heard.

3       Liu's received sufficient process regarding the termination of her public

4  employment, assuming that this claim is timely.[3]  Liu did not receive advance notice of

5  the layoff, but she did receive thirty days of pay in lieu of advance notice in accordance

6  with PPSM 60.  HD Ex. 35.  Liu is not entitled to a full adversarial hearing prior to a layoff

7  when UC provided notice and an explanation of the reasons for her termination, along

8  with a reasonable post-termination procedure comporting with due process.  See Gilbert

9  v. Homar, 520 U.S. 924, 929–35 (1997); Townsel v. San Diego Metro. Transit Dev. Bd.,

10  65 Cal. App. 4th 940, 947 (1998).  In fact, Liu was entitled to a hearing at Step III of the

11  UC internal grievance process.  See PPSM 70 at p. 12–14 (available at

12  http://policy.ucop.edu/doc/4010417/PPSM-70).  However, Liu neglected to pursue this

13  procedure and failed to select an arbitrator despite receiving notice of the requirement

14  that she do so.

15       As to Liu's claims that she was improperly denied a hearing by the UC

16  Whistleblower Program and the DLSE, even assuming that a protected interest is

17  implicated, Liu was afforded sufficient process.  Liu's allegations of discrimination and

18  retaliation have been investigated several times by different agencies, and she has

19  received a number of written opinions explaining the reasons that her claims were

20  dismissed.  Liu's UC Whistleblower complaint was investigated, found to be unsupported

21  by the facts, and dismissed.  UC's Whistleblower Protection Policy does not appear to

22  provide for an adversarial evidentiary hearing.  See University of California,

23  Whistleblower Protection Policy at 6–10, http://policy.ucop.edu/doc/1100563/WPP.  Liu

24  also received a full investigation by the DLSE, which grants an evidentiary hearing only

25

26  _____

27  [3] Liu's procedural due process claim regarding her 2009 termination is presumably made
pursuant to 42 U.S.C. § 1983, which incorporates the "statute of limitations applicable to
the most similar state cause of action," Briley v. California, 564 F.2d 849, 854 (9th Cir.

28  1977), which in this case would be two years.  Jones v. Blanas, 393 F.3d 918, 927 (9th
Cir. 2004).

United States District Court
Northern District of California

1   when it is "necessary to fully establish the facts."  Cal. Lab. Code § 98.7(b).  Liu was able

2   to appeal the Deputy Labor Commissioner's decision through all the levels of the

3   California state court system and to the United States Supreme Court.  In short, Liu has

4   received notice and "meaningful opportunity" to be heard at each stage of each

5   administrative process.  Matthews, 424 U.S. at 333.  Liu is not constitutionally entitled to

6   an adversarial evidentiary hearing when her claims have been investigated and

7   dismissed.

8         Liu's alternative basis for her due process claim appears to allege collusion

9   between the defendant, the Labor Commissioner, the Clerk of Alameda County Superior

10  Court, and her former attorney Walston to "interfere" in the DLSE process and deny her a

11  fair hearing and appeal.  FAC ¶ 69.  Summary judgment in favor of the defendant is

12  appropriate on this theory for two reasons.  First, defendant correctly points out that

13  plaintiff has no competent evidence of any such conspiracy against her.  Second, plaintiff

14  has conceded that her complaints regarding the DLSE investigation and appeal process

15  are against DLSE and Walston; the Regents were not involved in these decisions.  Liu

16  Dep. Tr. 257:13–258:6, 259:7–261:17, 269:17–270:14.

17        **5.      Fifth Claim – Retaliation in Violation of California Labor Code § 1102.5**

18        California Labor Code § 1102.5 is a whistleblower protection statute providing that

19  "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against

20  an employee for disclosing information, or because the employer believes that the

21  employee disclosed or may disclose information, to a government or law enforcement

22  agency . . . ."  Cal. Lab. Code § 1102.5.  The elements needed to prove whistleblower

23  retaliation under this statute parallel those of Title VII.  A plaintiff must show that "(1) she

24  engaged in a protected activity, (2) her employer subjected her to an adverse

25  employment action, and (3) there is a causal link between the two."  Mokler v. Cnty. of

26  Orange, 157 Cal. App. 4th 121, 138 (2007).  At most, a three-year statute of limitations

27  applies to this claim as it is "[a]n action upon a liability created by statute."  Cal. Civ. Proc.

28  Code § 338(a); Minor v. Fedex Office & Print Servs., Inc., 182 F. Supp. 3d 966, 988 (N.D.

United States District Court
Northern District of California

1   Cal. 2016) (three-year statute of limitations applies to § 1102.5 claim, presuming that suit

2   does not seek "the civil penalty provided in § 1102.5(f)").

3         Liu's claims for retaliation under this statute regarding her layoff and first job

4   search are time-barred.  Liu filed suit on October 28, 2015.  Dkt. 1.  All of her allegations

5   relating to her 2009 layoff and her 2009–2011 job search occurred outside of the three-

6   year limitations period.

7         Liu's claims of retaliation during her second job search, while not time-barred, fail

8   as a matter of law for the same reasons that Liu's Title VII retaliation claim fails.  Liu has

9   not submitted any evidence of a causal link between her protected activities and her

10   failure to be rehired, or even shown that any hiring manager at UC Berkeley in the

11   relevant period was aware of her earlier complaints.  See Morgan v. Regents of Univ. of

12   Cal., 88 Cal. App. 4th 52, 70 (2000)  ("Essential to a causal link is evidence that the

13   employer was aware that the plaintiff had engaged in the protected activity.") (quotation

14   omitted).

15         **6.**      **Sixth Claim – Breach of Constitutional Rights**

16         The basis for Liu's sixth claim, for breach of "constitutional rights" and "damage [to]

17   plaintiff's reputation" is not entirely clear.  This claim appears to be based on the same

18   allegations as Liu's defamation and retaliation claims.  See FAC ¶¶ 75–77.  To the extent

19   that this claim sounds in defamation, it is time-barred for the same reasons as Liu's third

20   claim.  To the extent that this claim sounds in retaliation, summary judgment in favor of

21   defendant is appropriate for the same reasons as Liu's second and fifth claims.  Finally,

22   to the extent that Liu is seeking to make a different constitutional claim, the only provision

23   that she has cited is the Due Process Clause, and it fails for the same reasons that Liu's

24   fourth claim fails.

25   **C.**      **Plaintiff's Motion for Summary Judgment**

26         Plaintiff has filed a cross motion for summary judgment.  As the court has already

27   concluded that summary judgment in favor of defendant is appropriate on all claims,

28   plaintiff's motion is DENIED.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Liu's claims for discrimination and retaliation (the first, second, and fifth claims) are either unexhausted or time-barred with regard to her layoff and first job search.  The "continuing violation" doctrine does not apply to discrete acts of alleged discrimination and retaliation.  Regarding her second job search, the claims are not time-barred, but Liu cannot meet her burden to affirmatively show that no reasonable trier of fact could find against her.  On the contrary, Liu has submitted no competent evidence that could be used to prove a nexus between protected activity and her failure to be rehired.

Liu's claim for defamation is time-barred, as it accrued in 2010 when Liu became aware of the allegedly defamatory statements.  Liu's fourth claim for due process, to the extent based on the denial of an evidentiary hearing, fails as a matter of law on the undisputed factual record, for the reasons discussed above in connection with defendant's motion for summary judgment.  To the extent that the fourth claim is based on an alleged conspiracy to "interfere" with the DLSE process, Liu cannot affirmatively show that no reasonable factfinder could rule against her when she has no evidence of such a conspiracy and has admitted that the defendant was not involved.  Finally, Liu's sixth claim for breach of constitutional rights is entirely derivative of her other five claims and fails for reasons discussed above.

## CONCLUSION

For the foregoing reasons, the Regents' motion for summary judgment is GRANTED.  The plaintiff's motion for summary judgment is DENIED.  The clerk shall close the case.

**IT IS SO ORDERED.**

Dated:  January 31, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge